UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

FELTON L. MATTHEWS, JR.,                    )
                                            )
                    Plaintiff,              )
                                            )              2:12-CV-01004-PMP-CWH
        v.                                  )
                                            )
WILLIAM AMBRIDGE, et al.,                   )
                                            )              ORDER
                    Defendants.             )
                                            )

Presently before the Court is Defendants James G. Cox, William Ambridge, Ryan Hesler, and Carlos Moran, Jr.'s Motion to Dismiss, or Alternatively, Motion for Summary Judgment (Doc. #64), filed on January 16, 2013.  Plaintiff Felton Matthews, Jr. filed an Opposition (Doc. #68) on January 24, 2013.  Defendants filed a Reply (Doc. #73) on February 4, 2013, and an Errata (Doc. #74) on February 5, 2013.

Also before the Court is Plaintiff's Cross-Motion for Summary Judgment (Doc. #67), filed on January 24, 2013.  Defendants filed an Opposition (Doc. #78) on February 7, 2013.  Plaintiff filed a Reply (Doc. #80) on February 13, 2013.

Also before the Court is Plaintiff's Motion to Strike Exhibit C for the I-File "Original" (Doc. #70) and to Supplement the Record (Doc. #71), filed on January 28, 2013.  Defendants filed Oppositions (Doc. #76, #77) on February 7, 2013.  Plaintiff filed Replies (Doc. #81, #82) on February 13, 2013.

**I.  BACKGROUND**

In the Amended Complaint, Plaintiff asserts three causes of action.  (Am. Compl. (Doc. #15).)  Count One alleges a violation of Plaintiff's First Amendment right to freedom

1   of expression based on Defendant Correctional Officer William Ambridge ("Ambridge")

2   confiscating from Plaintiff's prison cell Plaintiff's hand-drawn comic book, which includes

3   scenes of sexual assault of a minor.  (Id. at 5.)  Plaintiff asserts he faces disciplinary charges

4   under a prison regulation that applies to materials received through the mail, but Plaintiff

5   drew the confiscated materials himself.  (Id. at 5-6.)  Additionally, Plaintiff contends that

6   the confiscated materials are no different than other publications, such as Penthouse or

7   Playboy, which contain similar depictions of violence or sexual contact.  (Id. at 6.)  Plaintiff

8   asserts his comic book was confiscated because he is a child sex offender and not because

9   the material violated any Nevada Department of Corrections ("NDOC") policy.  (Id.)

10  Plaintiff further contends Defendant James Cox ("Cox"), as NDOC director, is responsible

11  for the policy and Cox denied relief on Plaintiff's grievance related to Ambridge's conduct.

12  (Id.)

13          Count two alleges an Eighth Amendment violation against Defendant

14  Correctional Officer Ryan Hesler ("Hesler") based on allegations that Hesler subjected

15  Plaintiff to attack by another inmate by telling the other inmate the nature of the charges for

16  which Plaintiff is incarcerated.  (Id. at 7.)  Finally, count three alleges Defendant

17  Correctional Officer Carlos Moran, Jr. ("Moran") retaliated against Plaintiff for filing suit

18  by confiscating and destroying Plaintiff's replacement drawings and writings.[1]  (Id. at 9-15.)

19          Defendants now move to dismiss, or alternatively for summary judgment.

20  Defendants argue Plaintiff failed to exhaust his administrative remedies for the claims set

21  forth in counts two and three, and therefore Plaintiff cannot bring suit on those claims.

22  Defendants also argue these claims fail on the merits, as there is no evidence Plaintiff was

23  attacked to support an Eighth Amendment claim, and there is no evidence of a causal

24  _____

25          [1]  Counts two and three of the Amended Complaint alleged other acts by Hesler and Moran
    which this Court found did not amount to constitutional violations.  (Screening Order (Doc. #14) at
26  4.)

connection between Plaintiff's lawsuit and Moran's seizure of materials from Plaintiff's cell.  As to count one, Defendants argue that a prisoner such as Plaintiff has no First Amendment right to pornography.  Additionally, Defendants argue Plaintiff's drawings are obscene, and thus are not entitled to First Amendment protection.  Defendants also contend they are entitled to qualified immunity.  Finally, Defendant Cox argues he did not personally participate in any alleged violations.

Plaintiff responds and countermoves for summary judgment.  Plaintiff argues that considering his comic book as a whole, it is not obscene and has literary merit as a comic book about a detective in a special victims unit.  Plaintiff also argues his drawings do not qualify as obscene child pornography because they do not depict actual minors.  Plaintiff contends that NDOC allows other prisoners to possess pornography, such as Penthouse or Playboy magazines, so long as that pornography does not include penetration, excretions, or weapons.  As to the Eighth Amendment claim, Plaintiff asserts that Hesler told other inmates about the nature of Plaintiff's charges.  As to the retaliation claim, Plaintiff contends Moran seized material from his cell based on Plaintiff filing suit against Ambridge.[2]

## II. DISCUSSION

Although styled as a motion to dismiss or alternatively for summary judgment, Defendants attach evidence to their Motion, and thus the Court will consider the Motion under the summary judgment standard.  See Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1207 (9th Cir. 2007).  Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[2] As is typical of Plaintiff's filings, his Opposition contains rambling allegations about other incidents and persons not relevant to this lawsuit.  As those incidents and persons are not at issue in this lawsuit, the Court will not address them.

law." Fed. R. Civ. P. 56(a), (c).  A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the non-moving party.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  Initially, the moving party bears the burden of proving there is no genuine issue of material fact.  Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002).  After the moving party meets its burden, the burden shifts to the non-moving party to produce evidence that a genuine issue of material fact remains for trial. Id.  The Court views all evidence in the light most favorable to the non-moving party.  Id.

### A. Exhaustion - Counts Two and Three

The Prison Litigation Reform Act requires a prisoner to exhaust administrative remedies before filing a lawsuit concerning prison conditions.  42 U.S.C. § 1997e(a). Failure to exhaust administrative remedies is an affirmative defense which Defendants bear the burden of raising and proving.  Jones v. Bock, 549 U.S. 199, 212-14 (2007).  The prisoner must "properly" exhaust administrative remedies by complying "with an agency's deadlines and other critical procedural rules."  Sapp v. Kimbrell, 623 F.3d 813, 821 (9th Cir. 2010) (quotation and brackets omitted).  Proper exhaustion must be completed before the prisoner may file a complaint in federal court.  Jones, 549 U.S. at 211.

The NDOC inmate grievance procedure is governed by Administrative Regulation 740 ("AR 740").  (Defs.' Mot. Summ. J. (Doc. #64) ["MSJ"], Ex. A.)  To exhaust available administrative remedies, AR 740 requires: (1) an informal review process; (2) a first level formal written grievance appealing the informal grievance decision to the warden; and (3) a second level grievance appealing the first level grievance decision, which is decided by the relevant deputy director.  (Id. at 4-12.)  AR 740 requires NDOC officials to respond at each grievance level within a specified time period, beginning from the date of receipt of the inmate's grievance.  (Id.)  The time limit for NDOC to respond to a second

1   level grievance is "sixty (60) days, not including transmittal time, from the date the

2   grievance is received by the grievance coordinator to the date it is returned to the inmate."

3   (Id. at 7.) "An overdue grievance response at any level is not an automatic finding for the

4   inmate," however an overdue response entitles the inmate to move to the next grievance

5   level, except at the second level.  (Id. at 3.)

6          No genuine issue of material fact remains that Plaintiff failed to exhaust available

7   administrative remedies with respect to the incident set forth in count two of the Amended

8   Complaint through grievance numbers 20062339493 or 20062933810.  In grievance

9   number 20062339493, Plaintiff informally grieved the incident related to his confrontation

10  with another inmate, but he did not assert in his informal grievance that Hesler instigated an

11  attack on him by advising other inmates of the nature of Plaintiff's charges.  (MSJ, Ex. B,

12  Attach. 1.)  Rather, Plaintiff contended another inmate instigated the fight after overhearing

13  a comment Plaintiff made, and Plaintiff filed the grievance to dispute a $50 charge assessed

14  against him even though he asserted he was not the instigator of the incident.  (Id.)  The

15  informal grievance was denied, and Plaintiff appealed to level one.  (MSJ, Ex. B, Attach.

16  1.1.)  Plaintiff's level one grievance also referred only to being charged $50 when he was

17  not the aggressor, and the grievance made no reference to Hesler instigating an attack on

18  Plaintiff.  (Id.)  Plaintiff's level one grievance was denied and Plaintiff appealed to the

19  second level, but he once again did not assert Hesler instigated the attack.  (Id.)

20         In grievance number 20062933810, Plaintiff asserted Hesler commented on the

21  nature of Plaintiff's charges in front of another inmate, but Plaintiff did not pursue the

22  grievance beyond the informal grievance level.  (MSJ, Ex. B, Attachs. 2, 2.1.)

23  Consequently, Plaintiff failed to fully exhaust the administrative remedies available to him

24  with respect to grievance number 20062933810.

25         Thus, although Plaintiff exhausted his administrative remedies regarding his

26  grievance about defending himself in the face of another inmate instigating a fight, he did

1   not exhaust his remedies for a claim that Hesler instigated an attack on him by advising

2   other inmates of the nature of Plaintiff's charges.  Count two therefore is not exhausted, and

3   the Court will dismiss it.

4          Likewise, no genuine issue of material fact remains that Plaintiff failed to exhaust

5   available administrative remedies with respect to the incident set forth in count three of the

6   Amended Complaint.  Plaintiff appealed his grievance related to the incident with Moran to

7   a second level grievance.  (MSJ, Ex. B, Attachs. 3-5.1.)  However, Plaintiff had not

8   received a response to his second level grievance before he filed the present lawsuit.  (MSJ,

9   Ex. B.)  Count three therefore is not exhausted, and the Court will dismiss it.

10                      **B.  First Amendment - Count One**[3]

11          To allay the "risk that fear of personal monetary liability and harassing litigation

12   will unduly inhibit officials in the discharge of their duties," government officials

13   performing discretionary functions may be entitled to qualified immunity for claims made

14   under 42 U.S.C. § 1983.  <u>Anderson v. Creighton</u>, 483 U.S. 635, 638 (1987).  Qualified

15   immunity protects "all but the plainly incompetent or those who knowingly violate the law."

16   <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).  In ruling on a qualified immunity defense, a

17   court considers whether the facts alleged show the defendant's conduct violated a

18   constitutional right.  <u>Sorrels v. McKee</u>, 290 F.3d 965, 969 (9th Cir. 2002).  If the plaintiff

19   has shown a deprivation of a constitutional right, the plaintiff also must show that right was

20   clearly established.  <u>Id.</u>

21          A right is clearly established if "'it would be clear to a reasonable officer that his

22   conduct was unlawful in the situation he confronted.'"  <u>Wilkins v. City of Oakland</u>, 350

23   F.3d 949, 954 (9th Cir. 2003) (emphasis omitted) (quoting <u>Saucier v. Katz</u>, 533 U.S. 194,

24   202 (2001)).  The Court should make this second inquiry "in light of the specific context of

25   _____

26          [3] The parties agree that Plaintiff exhausted administrative remedies with respect to count one.

6

the case, not as a broad general proposition." Saucier, 533 U.S. at 201.  An officer will be entitled to qualified immunity even if he was mistaken in his belief that his conduct was lawful, so long as that belief was reasonable.  Wilkins, 350 F.3d at 955.  Although the plaintiff bears the burden of showing the right at issue was clearly established, a plaintiff need not show a court previously had declared the defendant's behavior unconstitutional if it would be clear from prior precedent that the conduct was unlawful.  Blueford v. Prunty, 108 F.3d 251, 254 (9th Cir. 1997).

Here, Plaintiff does not identify any clearly established law that would have put Defendant Ambridge on notice that he would violate Plaintiff's First Amendment rights by seizing from Plaintiff, a convicted and incarcerated child sex offender, hand-drawn depictions of assault, weapons, penetration, a child being raped by her stepfather, and a violent rape at knife point.  (MSJ, Ex. C (Doc. #65).)  Plaintiff does not dispute that NDOC has legitimate correctional safety, security, and rehabilitation concerns relating to disallowing certain materials to prisoners, nor does he appear to challenge NDOC's regulations prohibiting prisoners from having certain materials, including sexually explicit materials or materials depicting weapons.  Rather, Plaintiff alleges Ambridge violated his First Amendment free expression rights by seizing Plaintiff's hand-drawn comic book which, among other things, depicts an eleven-year-old girl engaged in various sex acts with her stepfather.

Plaintiff contends that because his comic book is a drawing, it does not depict real child pornography and thus is protected speech under New York v. Ferber, 458 U.S. 747, 764-65 (1982) ("We note that the distribution of descriptions or other depictions of sexual conduct, not otherwise obscene, which do not involve live performance or photographic or other visual reproduction of live performances, retains First Amendment protection.").  However, none of the cases upon which Plaintiff relies involved the context of prisoners.  See Ashcroft v. Free Speech Coalition, 535 U.S. 234, 243 (2002) (trade

1   association for adult entertainment industry, a publisher, a painter, and a photographer);

2   Ferber, 458 U.S. at 751-52 (proprietor of bookstore); Miller v. Cal., 413 U.S. 15, 16 (1973)

3   (seller of illustrated books); United States v. Handley, 564 F. Supp. 2d 996, 998-99 (S.D.

4   Iowa 2008) (non-incarcerated private possessor of cartoons depicting children engaged in

5   sex acts).

6           Although prisoners do not lose all the protections of the Constitution upon

7   incarceration, when a prisoner challenges a prison regulation as impinging on his First

8   Amendment rights, the Court will uphold the regulation "if it is reasonably related to

9   legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89-90 (1987).  To

10  determine whether NDOC's policy of excluding certain materials from prisoners is

11  reasonably related to legitimate governmental interests, the Court considers four factors:

12          (1) whether there is a valid, rational connection between the policy and
            the legitimate governmental interest put forward to justify it; (2)
13          whether there are alternative means of exercising the right; (3) whether
            the impact of accommodating the asserted constitutional right will
14          have a significant negative impact on prison guards, other inmates and
            the allocation of prison resources generally; and (4) whether the policy
15          is an exaggerated response to the jail's concerns.

16  Mauro v. Arpaio, 188 F.3d 1054, 1058-59 (9th Cir. 1999) (quotation and internal quotation

17  marks omitted).

18          NDOC prohibits the display of "sexually explicit/graphic activities," as well as

19  the display of "any type of nudity or partial nudity."  AR 711.01(3)(D)(1)-(2).[4]  NDOC also

20  places limits on prisoner correspondence.  Specifically, NDOC allows "[p]hotographs of

21  nude individuals . . . under limited conditions."  AR 750.03(5)(B)(2).  However,

22  "[p]hotographs depicting sexual activity are prohibited."  AR 750.03(5)(B)(2)(a).  Any

23  publications or magazines--

24  _____

25      [4]   Neither party provides the Court with NDOC's administrative regulations relating to
    prohibited materials, but the existence and content of the regulations are subject to judicial notice.  See
26  Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001); Fed. R. Evid. 201(b).

[m]ust not be detrimental to the security, good order, or discipline or which facilitates criminal activity, including but not limited to:

. . .

(g) Display realistic pictures of guns or knives suitable for use in making of facsimile weapons;

(h) Content is sexually explicit material, which by its nature poses a threat to the security, good order, rehabilitation or discipline of the institution, or facilitates criminal activity.

AR 750.03(5)(G)(2)(g)-(h).  Sexual activity is defined as:

[s]exual contact including, but not limited to, sexual intercourse, deviant sexual behavior, kissing, fondling, and/or manipulation of the genitalia, buttocks, and breasts of another person in a manner which produces or is intended to produce sexual stimulation or gratification with the consent of both persons.

NDOC Admin. Regs. Manual, Admin. Regs. Definitions.  Sexually explicit includes:

an act of sexual intercourse, fellatio, sodomy, cunnilingus, sado-masochistic abuse, or penetration of any part of a person's body with an object either of a male or female gender.  Pornographic activities with a minor, bestiality, or any sexual act, which constitutes a violation of law or encourages a violation of the law, will be considered as sexual activities.

Id.

NDOC's regulations and Ambridge's actions taken pursuant thereto are rationally connected to legitimate governmental interests of maintaining security, facilitating rehabilitation, and reducing sexual harassment of female detention officers, and courts have upheld similar prison restrictions as legitimate, neutral restrictions rationally related to legitimate governmental interests.  Mauro, 188 F.3d at 1059; Frost v. Symington, 197 F.3d 348, 358 (9th Cir. 1999).  The policy allows other means for Plaintiff to exercise any rights he may have in writing or drawing comic books, including drawings of nude individuals, so long as the drawings or writings meet NDOC's guidelines and do not undermine rehabilitative efforts.

The impact of allowing Plaintiff the unrestricted ability to draw materials which would run afoul of NDOC regulations, and which would depict sexual assault of a child,

would be significant. "[S]uch access could lead to the bartering of sexually explicit materials and anatomical comparisons which could in turn lead to fights between inmates." Mauro, 188 F.3d at 1061.  Additionally, allowing such drawings could expose female detention officers to sexual harassment.  Id. at 1062. Moreover, NDOC and Ambridge reasonably could conclude that promoting sexually violent fantasies through explicit drawings, including rape at knife point and sexual assault of minors, is counterproductive to rehabilitation.

Finally, Plaintiff has not articulated alternatives to the regulation at issue that would fully accommodate his rights at "de minimis cost to valid penological interests." Turner, 482 U.S. at 90-91.  Count one involves a discrete incident where Ambridge seized a particular hand-drawn comic book which contains graphic drawings of a stepfather repeatedly engaging in various sexual activities with his eleven-year-old stepdaughter, who is legally incapable of consent,[5] and which states the stepfather had been doing so since the stepdaughter was in the third grade.  (MSJ, Ex. C.)  The comic book also shows a violent rape at knife point, several weapons, and an assault with fists.  (Id.)  Plaintiff has presented no clearly established law that Ambridge was required to excise the comic book on the spot to remove offending material or to allow Plaintiff to do so.  Requiring a correctional officer to make page-by-page determinations would impose a greater than de minimis cost to penological interests, particularly where the material as a whole undermines rehabilitative concerns.  In sum, Plaintiff has not met his burden of showing clearly established law such that a reasonable officer in Ambridge's position would have known he was violating Plaintiff's First Amendment rights by seizing from a convicted and incarcerated child sex offender drawings and writings depicting violence and graphic representations of repeated sexual assault of a child.

---

[5]  See Nev. Rev. Stat. § 200.364(5).

To the extent Plaintiff believes the policy was applied to him inappropriately because NDOC relied on a regulation relating to correspondence but his comic book was not mailed in or out of the facility, Plaintiff has not identified any clearly established law that would have put Ambridge on notice that applying NDOC regulations related to correspondence to a drawing located in Plaintiff's cell would violate Plaintiff's First Amendment rights.  To the extent Ambridge was mistaken about the application of AR 750, Plaintiff has presented no law or argument that it was not a reasonably mistaken belief that prohibitions relating to photographs sent in correspondence could apply to drawings found in a prisoner's cell.

Plaintiff also asserts he was treated differently because other inmates are allowed similar materials in magazines such as Playboy and Penthouse and he is being targeted because of the nature of his offense.  Plaintiff does not assert an equal protection claim, but to the extent he is attempting to do so, any such claim would fail because child sex offenders are not a suspect class, burdens on prisoners' First Amendment rights are not subject to strict scrutiny, and restricting such offenders' access to materials is rationally related to rehabilitation concerns.  See Turner, 482 U.S. at 89; Honolulu Weekly, Inc. v. Harris, 298 F.3d 1037, 1047 (9th Cir. 2002); Mauro, 188 F.3d at 1059.  Moreover, Plaintiff's claim fails factually, as he contends other prisoners were entitled to have pornography so long as it contains "no penetration, no excretions."  (Opp'n to Mot. Summ. J. (Doc. #68) at 4.)  However, the comic book Ambridge seized contained depictions of penetration and excretions.  (MSJ, Ex. C.)  Consequently, under Plaintiff's own arguments, no inmate would have been permitted to retain the material Ambridge seized.

Because Plaintiff has not met his burden of showing Ambridge violated a clearly established right, the Court will grant summary judgment in favor of Defendant Ambridge. Additionally, because Plaintiff's claim in count one against Defendant Cox is dependent on his claim against Ambridge, the Court will grant summary judgment in favor of Defendant

Cox as well.  Moreover, Defendant Cox is entitled to summary judgment because there is no evidence he personally participated in the seizure of materials from Plaintiff's cell or in the grievance process related thereto.  See Lacey v. Maricopa Cnty., 693 F.3d 896, 916 (9th Cir. 2012).

### C. Motions to Strike and Supplement

The Court will deny Plaintiff's Motion to Strike because the record copy of Plaintiff's comic book is adequate for the Court to determine its contents.  The Court will deny Plaintiff's Motion to Supplement because the "love autobiography" and the "gag X-mas card" were not among the materials Ambridge seized, and thus they are irrelevant to the only exhausted claim in this case.

## III. CONCLUSION

IT IS THEREFORE ORDERED that Defendants James G. Cox, William Ambridge, Ryan Hesler, and Carlos Moran, Jr.'s Motion to Dismiss, or Alternatively, Motion for Summary Judgment (Doc. #64) is hereby GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Cross-Motion for Summary Judgment (Doc. #67) is hereby DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike Exhibit C for the I-File "Original" (Doc. #70) is hereby DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Supplement the Record (Doc. #71) is hereby DENIED.

IT IS FURTHER ORDERED that Judgment is hereby entered in favor of Defendants James G. Cox, William Ambridge, Ryan Hesler, and Carlos Moran, Jr. and against Plaintiff Felton L. Matthews, Jr.

DATED: July 30, 2013

PHILIP M. PRO
United States District Judge

12